Read, J.
This is the case of a bill filed to declare respondent, Webster, a trustee of land described in the bill, in favor of complainant; to compel a conveyance of the legal title of said land to tcomplainant, the cestui que trust, and for an account of rents and profits.
As a ¡iroliminary question of practice, it is contended that the merits of this case, on the appeal, are not before the court for examination.
A decree was rendered at the November term of the court of common pleas, 1836, in favor of the complainant, and a reference had to a master, to state an account, and the cause continued. At .the next term of the court of common pleas, the report of the .muste'r coming in, was confirmed, and an appeal then taken.
*442 It is insisted that the appeal does not bring up the original merits, but only the master’s report, and proceedings thereon.
It is unnecessary to examine this question, as the parties have-disposed of it themselves. After the appeal, respondent obtained *leave to file a supplemental answer, to which complainant put in a replication, and testimony was taken in reference to the-merits of the whole case.
After the pleadings are changed on an appeal, as to the merits-of the whole controversy and .testimony taken, the court must necessarily dispose of the case as made, and, the whole matters in controversy being involved, must look into the entire case. The only mode to prevent this would be to regard the subsequent pleadings as informal, and strike them from the record, which is-not claimed, and thus re-establish the old issues decided below, and contend that they had been decided, and not appealed from. This is the only way this question could come up. But, even if there had been no change of pleadings, which fully disposes of this question, it would seem to fall within the ease of Kelley and others v. Stanbery and others, 13 Ohio, 408, decided at the-present term, and would still be before the court upon its full merits.
The facts material to the decision of this case, as appear from.the bill, answers, exhibits, and testimony, are as follows :
On April 1, 1809, Jonathan Warner, the complainant, sold the-land in controversy to John Blizzard, but executed the deed in the presence of but one witness, which transferred the equity in the land only. Blizzard removed to the State of New Jersey, in. the year 1811, where he has resided ever since.
An attachment was sued out against Blizzard, as a nonresident debtor, for the use of defendant, Webster, and others. In 1823, a judgment, under the attachment, was rendered against Blizzard,-in the court of common pleas, the proceedings in attachment having been certified to that court, as lands only were attached. Under this judgment the land in controversj' was sold. Daniel Webster became the purchaser, and a sheriff’s deed was-executed to said Webster.
The notice of the pendency of the suit in attachment, required by the statute, was not given; hence the .judgment and proceedings on the sale were void, and Webster acquired no title by his-, purchase at the sale had under the judgment in the attach merit suit-
*443 ^Webster filed a bill against Warner and wife, to compel a conveyance of the legal title of the land bought by him at said sheriff’s sale. At the April term of the court of common pleas, 1829, Warner, not objecting that the proceedings under the attachment were void, the court decreed a release of title by Warner to Webster. This decree was not appealed from, and stands unreversed. Blizzard was not a party to this proceeding. The legal title, in this manner, passed to Webster. In 1836, Warner purchased from Blizzard his equitable interest in this land, for full and valuable consideration. Webster has been in the possession of the land ever since he purchased it at sheriff’s sale.
Thus it appears that Blizzard took an equity only by his purchase from Warner. Webster acquired no title whatever by his-purchase under the proceedings in attachment, the judgment being totally void, as the court rendering it had no jurisdiction, of the person, and none over the land, for want of notice of thependency of the suit, as required by the statute. Hence the judgment was void, and the sheriff’s deed a nullity. But the legal title passed from Warner to Webster by virtue of the decree in the chancery proceeding, compelling a release from Warner to Webster, which stands unreversed. The legal title thus being in Webster, he holds the land, as trustee, for the person having the equity. Blizzard acquired the equity from Warner by the deed, defectively executed in 1809, and Warner reacquired the equity from Blizzard, by purchase, in 1836. Hence, Webster, the trustee, is bound to convey the legal title to Warner, the cestui que trust, and account for the rents and profits, deducting the amount paid for taxes, and the amount of all valuable and lasting improvements.
But it is contended, as a matter of defense set up in the supplemental answer, that Blizzard, by G-iddings, his attorney, prior to the time Warner purchased the equity, entered into a contract with Webster, by which it was agreed that Blizzard should pay to Webster a certain sum of money, to be ascertained by certain-persons named as arbitrators, and also the value of such improvements as Webster had put upon the land, *to be ascertained in like manner, and also the taxes; upon which amounts, boing so ascertained and paid, deducting therefrom the amount of the rents and profits, Webster was to execute a quitclaim deed to *444 Blizzard for the land, and that the effect of this contract was to invest Webster with the equitable title in the land.
Such is not the legal effect of this contract. It transfers no •equity in the land, but only declares that Webster shall transfer the legal title to Blizzard, on the performance of certain conditions. It is nothing more than an agreement to settle differences in a specified mode, and to perform certain acts. This agreement remains unexecuted, and the remedy, if any, is upon the contract itself. This agreement, then, in no way affects this case, and may be laid out of view. Besides, there is not sufficient proof shown that Blizzard authorized it to be made.
Webster, therefore, is decreed to convey, by deed of special warranty, to Warner, and the report of the master, made herein, conforming to the principles heretofore indicated, is confirmed, and the cause is remanded to the county, to take an account of rents and profits accruing since former report.
Decree for complainant.